UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KELLY ROY, et al.

                Plaintiffs,
and

MARSHFIELD CLINIC and
ST. JOSEPH'S HOSPITAL,

                Involuntary Plaintiffs,

    v.                                                                            Case No. 03-C-1265

FOREST COUNTY POTAWATOMI
GROUP HEALTH, DENTAL, VISION
AND SHORT TERM DISABILITY PLAN and
FOREST COUNTY POTAWATOMI,

                Defendants and Third-Party Plaintiffs,

**DECISION AND ORDER**

Plaintiffs have filed a motion for summary judgment, and the defendants have filed a motion for reconsideration of my prior denial, on April 7, 2005, of their own motion for summary judgment. (*See* Docket #101.) I will address the motion for reconsideration first.

**I. Reconsideration of the Application of *Res Judicata* (Claim Preclusion)**

The motion for reconsideration seeks another look at the question of whether the plaintiffs' claims are precluded by virtue of an earlier-filed action in Oconto County Circuit Court. The motion is founded upon a recently amended ruling issued by that court. That court had originally dismissed the plaintiff's claims–e.g., breach of contract–on the basis that they were preempted by ERISA, but the dismissal order did not state whether it was with or without prejudice, a fact which

proved to be a central issue in my April 2005 decision. Informing my decision was the fact that the Oconto court had, in December 2004, amended its opinion to state that the court's intention was to dismiss the action *without* prejudice. I also opined that because the Oconto ruling had originally been silent on the issue, and because the dismissal was based on pleading failures rather than a determination of the actual merits of the coverage dispute raised, the dismissal must have been without prejudice. Largely on that basis, I declined to find that the plaintiff's current ERISA claims were precluded by the Oconto court's dismissal because that dismissal did not constitute, for claim preclusion purposes, a "final judgment on the merits in a court of competent jurisdiction." *Northern States Power Co. v. Bugher,* 525 N.W.2d 723, 728 (Wis. 1995).

Since my decision in April, the Oconto court has reversed course. In September, upon the Potawatomi Plan's motion for reconsideration, the court concluded that it had lacked the power, in December 2004, to revise its earlier order to be a dismissal without prejudice. It now concluded that the original dismissal was indeed *with* prejudice. It is this latest decision of the state court that the Plan relies upon in renewing its argument that claim preclusion applies. That is, having succeeded in its state court motion for reconsideration, it now seeks to use that reconsideration as a basis for *this* court to reconsider the issue. It argues that because it is now clear that the original order was *with* prejudice, all of the claims involved in that case–including ERISA claims that could have been (but were not) brought–were resolved by the state court's dismissal with prejudice.

Claim preclusion is a doctrine meant to prevent parties from (as is said) getting a second kick at the cat, or bite at the apple, or the like. It essentially prevents multiple lawsuits based upon the same conduct, recognizing that "the preservation of public tranquility requires that the matter be at an end." *Kruckenberg v. Harvey,* 2005 WI 43, 694 N.W.2d 879, 885 (Wis. 2005). "Claim

2

preclusion thus provides an effective and useful means to establish and fix the rights of individuals, to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, to prevent inconsistent decisions, and to encourage reliance on adjudication." *Id.* at 884.

I first note that these concerns are not squarely present in this case. The plaintiffs' case based on state law was dismissed in state court because the court concluded that ERISA preempted their claims. That, however, does not mean the plaintiffs "lost" in the traditional sense, i.e., that there was no recovery available to the plaintiffs. Instead, under the rules of ERISA preemption, it simply means the unsuccessful state law claims should have been styled (or construed) as a federal claim under ERISA. Having learned from the state court that their claims were actually federal ERISA claims, the plaintiffs filed the present action in federal court soon after. The plaintiff's federal ERISA lawsuit was functionally identical to the common scenario presented when a plaintiff files a benefits case in state court and the defendant removes to federal court on ERISA preemption grounds. Viewed in that light, there would seem to be no harm in requiring the defendant to defend in federal court the very lawsuit which it pointed out itself was really a federal lawsuit in the first place.

That said, the question now presented by the motion for reconsideration is what effect to give, if any, to the state court's most recent statement that the original dismissal was *with* prejudice, i.e., a decision on the merits. In my April decision and order, I concluded as follows:

> Here, it was clear at the time the state court dismissed plaintiff's state court action that the defect in her complaint, i.e., her failure to assert an ERISA claim, could be readily cured by a subsequent complaint. Given the circumstances, all parties certainly expected plaintiff to bring such a claim, and she did in a subsequent complaint filed less than two months after the dismissal of her state court action. Because ERISA claims arise under federal law, it made sense for plaintiff to bring such a claim in federal court. Thus, there was no need for plaintiff to seek leave to

3

amend her complaint in the state court action. Under these circumstances, I conclude that plaintiff's ERISA claim is not barred.

(April 7, 2005 Decision and Order at 13-14.)[1]

None of that has changed by virtue of the state court's most recent amendment. For claim preclusion purposes, the issue is not what the state court says *now* about the dismissal, but what was evident at the time of the dismissal in 2003. This requires a bit of reconstruction. The order of dismissal merely concluded that the claims brought by the plaintiffs were "subject to the preemption provisions of ERISA" and then proceeded to grant the Potawatomi Plan's renewed motion to dismiss the case. (Wesley Aff., Ex. 5.) Potawatomi's motion to dismiss actually provided little detail on the preemption argument, instead joining the argument made by Blue Cross in its own dismissal motion: "The Potawatomi Group Health Plan agrees with BCBSUW's ERISA preemption argument asserted in its motion to dismiss filed with this Court on April 14, 2003, and formally joins in the same as it pertains to that argument." (Wesley Aff., Ex. 9, ¶ 4.) Reference to Blue Cross's motion to dismiss reveals its forthright concession that "[g]iven that Plaintiffs' state law claims are preempted by ERISA, Plaintiffs [sic] only option is to bring an ERISA-based benefit claim against" Blue Cross. (Wesley Aff, Ex. 10.) Thus, in its motion to dismiss, the Plan's own argument to the state court recognized that the plaintiffs' only option was to bring an "ERISA-based

---

[1] It is true that in a letter supplementing his argument against dismissal on preemption grounds after the issue had been fully briefed and argued, counsel for plaintiffs did request in the alternative for an opportunity to replead under ERISA. But the request was made not because counsel thought the state court's ruling on the motion to dismiss would preclude his filing a separate claim under ERISA, but rather "so that Mr. and Mrs. Roy, wage earners, need not incur another filing fee." (Third Aff. of Brian A. Price, Ex. 3 at 7.) The request was never addressed by the trial court.

benefit claim" to recover the benefits it sought. That argument was apparently adopted by the state court when it granted the defendants' motion to dismiss.

The state court's recent statement that the dismissal was "with prejudice" does not change that fact. The issue presented here is whether the ERISA claim was precluded at the time the plaintiff filed this case, i.e., in November 2003. The plaintiff was entitled to rely on the dismissal order as it existed at the time it filed the present lawsuit in November 2003, and at that time the plaintiffs found themselves having suffered a dismissal on preemption grounds. The "live" arguments that had carried the day included the defendant's own statement that the plaintiff's only option was to bring an ERISA lawsuit. When the plaintiff did exactly that, the defendant is in no position to claim that the state court's dismissal somehow precluded the very option it had itself argued for.

I must also emphasize that the goals of *res judicata* would not be achieved by application of the doctrine in this case. Indeed, they would be perverted. To recall, the doctrine is meant to allow reliance on final judgments on the merits so as to "establish and fix the rights of individuals, to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, to prevent inconsistent decisions, and to encourage reliance on adjudication." *Kruckenberg,* 2005 WI 43, 694 N.W.2d at 884. Instead of relying on fixed rights based on a settled decision on the merits, the entire basis of the Potawatomi Plan's efforts at present has been to *unsettle* the underlying decision it claims was so secure in the first place. How can the Plan claim it has relied on a 2003 decision whose purported clarity has only been revealed though both a motion to reopen and then a motion to reconsider the motion to reopen, the latter of which was resolved only in September 2005? Instead, it is clear that the Plan is attempting to apply claim preclusion in reverse, with the

5

preclusion stemming not from an earlier-decided action on the merits but from an amendment filed by the state court *after* my own decision on the matter was issued. A court deciding whether to apply *res judicata* cannot meaningfully do so when the purported judgment on the merits is a moving target. Indeed, what is to prevent the plaintiffs from now going back to the state court to seek a reconsideration of the reconsideration? One goal of *res judicata* is that "public tranquility requires that the matter be at an end," *id.* at 885, but if anything is clear in this case it is that the underlying state court decision has been anything but at an end. Accordingly, as the Plan's current attempt to apply *res judicata* is founded solely on the most recent amendment to the underlying state court decision, the Plan's effort fails.[2]

Finally, I note that when the state court recently reconsidered its December 2004 clarification that the 2003 order was "without prejudice," it did so on the basis that it now believed it lacked the power, under Wisconsin law, to make such an amendment. (Price Aff., Docket # 115, Ex. 1.) If that is true, then presumably the court *also* lacked the ability under the same provisions to amend the 2003 order to be "with prejudice." While not dispositive of my own conclusion on this issue, it would appear that the original order of dismissal should simply be read as-is, without either the later clarification in December 2004 or the retraction of that clarification, combined with a statement that the original dismissal was "with prejudice," issued in September 2005. In sum, I see no basis to revisit my decision denying the defendant's motion on claim preclusion grounds.

---

[2]It should go without saying that the doctrine's corresponding goal–"to preserve judicial resources"–has not been served. *Id.* at 884.

**II. Summary Judgment**

The plaintiffs have moved for summary judgment. Their brief expresses some frustration that in the several years of this dispute the Plan has never even responded to any of their claims for coverage. This frustration has likely compounded in view of the Plan's response brief. There, the Plan does not even argue that coverage does not exist; instead, it informs us that summary judgment should be denied because the plaintiffs did not comply with Civil Local Rule 56.2. "The factual assertions in the Plaintiff and Involuntary Plaintiffs' brief in support of their motion for summary judgment are not supported by specific citations to evidentiary materials in the record." (Def. Br. at 25-26.) This technical objection is not well taken. It is not as though the plaintiffs have submitted briefs with no evidentiary support at all or no links to the evidentiary record; it is merely that plaintiffs in their briefs, which cite to the proposed findings of facts, which in turn cite to the evidentiary record, did not *directly* cite to the evidentiary record themselves. Suffice it to say that this is not sufficient grounds to deny summary judgment on a bona fide claim for benefits.

Absent from the response brief is any argument that the Plan is not liable, and it seems clear that the Plan has conceded all the material facts that underlie the claims of liability. Thus, summary judgment is proper at least on the liability issue, which apparently was never an issue at all. Any outstanding genuine dispute about the proper amount of damages appears also to be mooted by supplemental proposed findings of fact: the plan's response to supplemental proposed findings numbered 39 and 46 indicate that the plan now admits that the amounts at issue are $582,024.49 for St. Joseph's Hospital and $140,645.03 for the Marshfield Clinic.

7

**III. Fees and Interest**

Plaintiffs have also moved for attorney's fees and prejudgment interest. "Whether to award prejudgment interest to an ERISA plaintiff is a question of fairness, lying within the Court's discretion, to be answered by balancing the equities." *Telemark Life Ins. Co. v. University of Chicago Hospitals,* 207 F.3d 876, 885 (7th Cir. 2000). In my judgment, interest is necessarily awarded in this case both to fully compensate the plaintiffs for their expenditures and to prevent the defendant Plan from being unjustly enriched by the delay in this case. "Prejudgment interest is appropriate in ERISA cases and the presumption in favor of prejudgment interest, especially in ERISA cases, is widely recognized." *Ehrman v. Henkel Corp. Long Term Disability Plan,* 194 F. Supp.2d 813, 821 (C.D. Ill. 2002). The plaintiffs press the notion that I should award interest at a rate of 12%, which is available under Wisconsin's insurance statutes when insurance companies wrongfully delay payment. That rate, however, would be rich indeed, and in fact the statute only applies to "insurers" and not to benefit plans. *See* Wis. Stat. § 628.46. Moreover, there is a concern that applying a state statute in that fashion would interfere with ERISA's broad preemptive scope–certainly 12% interest is not necessary to make the plaintiffs whole, which is one of ERISA's central goals. The proper course appears to be an award of interest at the average prime rate for the period in question. *Ehrman,* 194 F. Supp.2d at 822. When judgment is ultimately entered, the amount will reflect interest at that rate.

As to attorney's fees, I first note that ERISA itself contemplates the award of such fees. 29 U.S.C. § 1132(g)(1). The statute commits the matter to the district court's discretion, but as the Supreme Court has recently reiterated, discretion in awarding fees is a matter of judgment and not merely one of inclination. *Martin v. Franklin Capital Corp.,* 2005 WL 3299410, *5 (December 7,

8

2005)(quoting *United States v. Burr,* 25 F. Cas. 30, 35 (No. 14,692d) (CC Va. 1807) (Marshall, C. J.)). The Seventh Circuit has articulated the essence of the question governing the exercise of that judgment: "Was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Quinn v. Blue Cross & Blue Shield Assoc.,* 161 F.3d 472, 479 (7th Cir.1998).

The fundamental basis of the Plan's refusal to pay was its view that the order issued by Judge Stadtmueller concluding that the Potawatomi plan was the primary plan did not say anything about Potawatomi being primary before the date of that order, i.e., March 21, 2003. That was, to say the least, an unusual position to take. What sense would it make, after all, to claim to be the primary plan only after a given date? In any event, the plan has not really offered any defense of liability throughout the course of this lawsuit. Instead, it has sought to muddy the waters by attempting to rewrite a state court judgment to have *res judicata* effect and has relied on hypertechnical Local Rules-based arguments in an effort to defeat summary judgment.

On the other hand, much of the delay in this action stems from the plaintiffs' own attempts to characterize their claims as arising under state, rather than federal, law. Those attempts, though not uncommon, are frowned-upon by federal courts. *See, e.g., Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1491 (7th Cir. 1996); *Shannon v. Shannon,* 965 F.2d 542, 553 (7th Cir.1992). Nevertheless, on balance I am persuaded that an award of attorney's fees is appropriate in this case. The plan's position has been one largely of obstruction and has not been without the taint of bad faith. Accordingly, I will award reasonable attorney's fees. Any responsibility that plaintiffs' counsel bears for the delay can be considered in the determination of the amount of fees awarded. I also note that plaintiffs have requested separate briefing on sanctions; in the event the plaintiffs

9

wish to pursue that avenue, they will have 14 days from the date of this order in which to file a motion to that effect.

**IV. Dismissal of Defendant Forest County Potawatomi**

A final issue has been raised, namely, the defendants' contention that the tribe itself is not a proper party in this lawsuit. Generally, as set forth in the cases cited in the defendants' brief, the plan itself is the party to be sued in an ERISA action for benefits. Though the issue has not been well-developed in this litigation, the plaintiffs offer no substantive reason not to dismiss the tribe from this action. Their only argument against dismissal is that the issue was raised only in the defendants' brief in opposition to the motion for summary judgment, which was also its brief in support of its motion for reconsideration. Yet it is the plaintiffs' burden, in seeking summary judgment, to establish that liability exists as to each defendant named, and they have not done so with respect to the tribe itself. Whether this has any practical import, however, is doubtful.

**V. Conclusion**

The defendant's motion for reconsideration is denied. The plaintiff's motion for summary judgment is granted with respect to the defendant plan; the motion is denied with respect to the defendant Forest County Potawatomi. The plaintiffs are directed to file within 14 days a statement of their reasonably incurred attorney's fees and their motion for sanctions.

**SO ORDERED.**

Dated this   12th   day of December, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
