UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KELLY ROY,

          Plaintiff,

v.                                             Case No. 03-C-1265

FOREST COUNTY POTAWATOMI GROUP
HEALTH DENTAL VISION AND SHORT
TERM DISABILITY PLAN,

          Defendant.

**ORDER**

In my decision and order of December 12, 2005, I granted plaintiffs' motion for summary judgment. I also granted plaintiffs' request for attorneys fees and directed them to file statements setting forth the specific amounts requested. In addition, I agreed to consider plaintiffs' request for sanctions against the defendants and directed them to file their motions within fourteen days. Both the plaintiff, Kelly Roy, as well as the involuntary plaintiffs, Marshfield Clinic and St. Joseph's Hospital, have now filed such statements. The defendants have filed their response and raised several objections, all of which I address below.

In addition, in response to a flurry of motions and filings, I directed counsel for all parties to appear at a hearing on February 13, 2006. At that hearing, several matters were addressed, including this court's jurisdiction in light of the recently-filed notice of appeal from my December 12, 2005 decision and order, as well as the propriety of the involvement of the "involuntary plaintiffs" in this case. Also addressed were the varying natures of relief sought by the plaintiffs.

At the hearing I indicated my belief that the entry of an order granting the motion for summary judgment was not itself intended to be a final judgment, as the order did not grant the entirety of relief at issue in this case. Moreover, the order explicitly contemplated further action over matters such as sanctions and attorney's fees. Thus, I concluded that I continue to possess jurisdiction over this case, at least as to any issues not already litigated (and thus the subject of the notice of appeal).

As to the involvement of the Marshfield Clinic and St. Joseph's Hospital, I inquired about their status because it was unclear from the record whether they were proper parties to this ERISA action. At the hearing, counsel for both providers indicated that an assignment of claims had been executed. If so, the providers would be deemed beneficiaries under ERISA. *See, e.g., Principal Mutual Life Ins. Co. v. Charter Barclay Hospital, Inc.,* 81 F.3d 53, 55-56 (7th Cir. 1996). A factual issue emerged, however, because a fire had apparently destroyed some of the actual signed copies of such releases. Counsel for the defendants objected to receiving the evidence of the assignments, given the fact that the hearing was not intended to be an evidentiary hearing. It also noted that, even were the assignments valid, the plan at issue here specifically prohibited such assignments.

Whatever the merits of the underlying dispute (if there *is* a dispute), I am convinced that the issue has been waived. *See Washington Nat. Ins. Co. v. Hendricks,* 855 F. Supp. 1542, 1554 (W.D. Wis. 1994)(noting waiver to raise issue in ERISA case constituted waiver). Indeed, although at the hearing counsel objected to the evidence regarding the assignment of Roy's claims and noted that the plan prohibited assignments, counsel for the defendants continued to insist that they were not making an issue of the presence of the other plaintiffs in this case. The issue was raised *sua sponte,* and I am satisfied that the presence of the "involuntary plaintiffs" (although that description is certainly a misnomer) is proper. They have been in the case essentially from the outset, they have

2

prosecuted their claims apart from the plaintiff herself, and to make an issue of their presence at this late stage, without the issue being raised by the defendants, would simply be unfair.

Finally, the hearing clarified that the nature of relief sought by the plaintiffs is different. The healthcare providers seek specific amounts payable under the Plan, and the Plan has not contested those amounts *per se*. Thus, as to the providers, the relief granted will be in the form of a specific judgment of money. That relief is contemplated by § 502(a)(1)(B), which allows a beneficiary (which the assignment of claims makes the providers) to "recover benefits due to him under the terms of his plan." The plaintiff, however, notes that she never sought a specific money judgment from this court; instead, all she requested was that the Plan process and pay benefits under the Plan as written. This is relief also contemplated by § 502(a)(1)(B), which allows a participant or beneficiary "to enforce his rights under the terms of the plan." Based on the filings and argument presented, it appears this relief would largely benefit those providers who did not participate in this litigation (and whose bills have gone unpaid by the plaintiff). It also benefits the plaintiff herself. In any event, there is nothing barring the grant of such relief in this case. Whether or not other providers were parties to this lawsuit does not affect this court's ability to order the Plan to comply with the terms of the ERISA plan governing the plaintiff's healthcare.

I will now address the issues of sanctions and attorney's fees.

**I. Attorney's Fees Under ERISA**

As noted, my earlier decision and order, ERISA contemplates the award of attorneys fees to the prevailing party. The Seventh Circuit has noted under ERISA "[t]here is a 'modest presumption' in favor of awarding fees to the prevailing party, but that presumption may be rebutted." *Senese v. Chicago Area Int'l Bhd. of Teamsters Pension Fund*, 237 F.3d 819, 826 (7th

3

Cir.2001). In deciding whether to award fees under ERISA, courts are to consider several factors:

> (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Herman v. Central States, Southeast and Southwest Areas Pension Fund,* 423 F.3d 684, 696 (7th Cir. 2005).

Regarding the first factor, the plaintiffs emphasized several statements I have made in the course of this litigation expressing my concern that it appeared the Plan had no defense on the merits. Plaintiffs note, for example, that I said in my decision granting their motion for summary judgment that "[t]he Plan's position has been one largely of obstruction and not without the taint of bad faith." Pl.'s Br. in Supp. of Sanctions at 1. (quoting Dec. 12 Decision and Order at 9.) Plaintiffs also point to my statement that "the Plan has not really offered any defense to liability throughout the course of this lawsuit." *Id.* at 2 (quoting Decision and Order at 9.) Regarding the Plan's initial response to this lawsuit, these comments are essentially true. The Plan asserted only one defense to plaintiffs' claim for benefits that ultimately had any basis in law or fact, and that defense - *res judicata* - was not even asserted in their original answer. But it goes too far to say that the Plan offered no defense to liability *throughout the course of the lawsuit*, and I now vacate that finding. As I said in granting defendants leave to file their amended answers, and as is also clear from my decisions denying the Plan's motion for summary judgment and its motion for reconsideration, I do not regard the defense of *res judicata* or claim preclusion in this case as frivolous.

Aside from this procedural defense that the Plan came up with long after the claims for

4

benefits had been submitted, however, it really offered no defense on the merits of the case either to its liability for benefits owed Ms. Roy for the care and treatment of her daughter or the amount of damages claimed by the two "involuntary" plaintiffs. The Plan's continued refusal to pay benefits clearly owed in this tragic case, once Judge Stadtmueller determined that its liability was primary, is incomprehensible. As a result of the Plan's refusal to pay benefits it now admits it owed, at least until plaintiff's counsel's aborted effort to sue the Plan in state court, plaintiff and her former husband have been the recipient of dunning letters from multiple health care providers and their collection agencies and faced the prospect of bankruptcy and financial ruin for almost five years. (Docket # 143; Roy Aff. ¶ 10.) And this is on top of the loss of their daughter to cancer. The fact that the Plan's attorneys belatedly came up with a defense to payment that was not frivolous does not detract from the overall bad faith with which it responded to plaintiff's claim for benefits that were clearly owed.

As for the second factor, the Plan does not claim it could not satisfy an award of fees, so its ability to pay is not an issue. The third factor supports an award of fees as well, inasmuch as it could be expected to deter similar conduct in the future. With respect to the fourth factor, the benefit conferred here is solely conferred on one member of the Plan rather than on a group, although numerous providers are implicated; as such, that factor does not itself favor an award of fees. Finally, comparing the relative merits of the parties' positions weighs strongly in favor of a fee award. Throughout this litigation, as noted previously herein and elsewhere, the Plan never presented a defense on the merits. The plaintiff and involuntary plaintiffs were simply seeking what was due them.

Most of the Plan's objections go to the amount of fees sought by the plaintiffs. In particular,

5

the Plan raises the objection that the fees are both excessive and are not properly documented. I agree in some limited respects that the fees set forth by the plaintiffs are unjustified. In particular, I will decline to award fees the plaintiff incurred in pursuing matters before state courts, as well as fees incurred in pursuing state law claims in this court that were obviously preempted. While the issues in the state case are intertwined with the merits of the plaintiffs' federal case, I am persuaded that the considerations set forth in § 502(g)(1) are not applicable merely because proceedings are related. Instead, the section applies to "any action under this subchapter," which is a limited reference to ERISA's civil enforcement regime. 29 U.S.C. § 1132(g)(1); *see also Bender v. Freed,* 2006 WL 240562, at *3 (7th Cir. Feb. 2, 2006) (noting sanction not applicable to conduct prior to instant federal proceeding). Moreover, the plaintiffs' efforts in the state court were due to decisions made by her own attorney and were not the result of the defendants' bad faith or unjustifiable legal arguments. As to the state law claims brought in *this* case, I noted in my order of April 7, 2005, that such claims were clearly preempted–indeed, the state court had already found as much. Thus, it would not be fair to compensate the plaintiffs for renewing such claims in this court. Because such work is not calculable with precision, however, I will simply reduce plaintiff Kelly Roy's attorney's fees by 30% to reflect the exclusion of fees relating to the state case and state law claims. *See, e.g., Stark v. PPM America, Inc.,* 354 F.3d 666, 674 (7th Cir. 2004)("The district judge did, however, properly reduce the defendants' fee request by 20 percent for time spent defending claims which were not ERISA claims.")

In all other respects, however, the defendants' objections are unfounded. First, their claim that the plaintiffs should not be awarded fees for any motions they lost is not supported by § 502(g)(1). That section simply allows fees and costs incurred in "any action"–it does not specify

6

Case 1:03-cv-01265-WCG   Filed 02/22/06   Page 6 of 12   Document 183

allowance of fees only for work on motions that proved successful. It is true that unsuccessful *claims* may justify a fee reduction (as noted in the preceding paragraph), but when a party's efforts are directed at pursuing the same general claim (payment under an ERISA plan), it makes much less sense to attempt to sever each of the plaintiff's unsuccessful motions along the way. The defendants' narrow interpretation would have courts endlessly parsing billing records to determine the relative merits of each motion filed; none of the cases cited by the defendants stands for such a proposition. Moreover, the nature of any lengthy action typically involves numerous motions, both dispositive and nondispositive, and one cannot reasonably expect the prevailing plaintiff to win all of them. More importantly, the merits of any motions brought by the plaintiffs would be a factor already accounted for in calculating whether to award fees in the first place. For example, if they had filed a series of unsuccessful and frivolous motions, the relative merits of the parties' positions would be tipped in the other direction, *Herman* 423 F.3d at 696, and fees might not be awarded at all. Thus, I will not reduce the attorney's fees simply because some of the motions filed by the plaintiffs were not successful, nor because all of the defendants' defenses were not wholly frivolous or without merit.

The defendants' primary objection is to the purported lack of billing specificity provided by plaintiffs' counsel. True, in order to award fees a district court must be satisfied that the amounts submitted correlate to work reasonably done in furtherance of the action. But the defendants' blanket objections to "block billing" are not persuasive, and the cases cited in support of their claim do not require the exclusion of fees merely because they are grouped together. Indeed, the Seventh Circuit has recently reaffirmed this point, noting that, "[a]lthough 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens*

7

*Bank and Trust of Chicago,* 433 F.3d 558, 569 (7th Cir. 2006). As noted above, plaintiff's attorney's work on the state case and state law claims will be excluded from the fee award here, but apart from that the defendants have not identified any legal work that would conceivably be impermissible. Moreover, it is not as though the fees charged are based on large, generic bills for "services rendered" or the like. Roy's counsel submitted a detailed statement of his charges, and, with their reply brief, the involuntary plaintiffs have also submitted detailed records of their billing, listing the amount of hours spent on each issue and the nature of the work performed. (Second Berryman Aff., Ex. 1.) Neither of these statements reflect the accounting problems possible when block billing is employed.

Defendants also object to an award of fees that reflects the filing of the instant motions for fees and/or for sanctions. Because ERISA itself comprehends an award of such fees in § 502(g), it would seem reasonable that a fee award should reflect the prevailing party's attempt to invoke the very procedure ERISA allows. *See Stark,* 354 F.3d at 674 ("we see no reason to exclude those hours.") As for fees incurred in filing the Rule 11 motions, the defendants provide no basis not to award fees for their preparation except inasmuch as they claim Rule 11 sanctions are not justified. Rule 11 motions, when properly brought, are part and parcel of the entire action and may reasonably be considered in awarding fees to the prevailing parties. In essence, such motions are made to enforce the very rules governing federal civil actions. As such, assuming they are not frivolously brought, such motions are within the general scope of the ERISA "action" and fees incurred to bring them may be awarded. Accordingly, the defendants' objections are not persuasive.

Because, with the exception of the state case and state claims brought in this case, I find the fees incurred by plaintiffs here to be reasonable, I will award them largely as submitted. (The

8

defendants have not objected to the lodestar calculations the plaintiffs offer.) The exception is that Attorney Michael McKenna's fees will be reduced by 30% to account for any work performed with respect to the state case or the bringing of state law claims in this case.

**II. Rule 11 Sanctions**

The plaintiffs also bring motions for sanctions pursuant to Fed. R. Civ. P. 11. In their briefs, the plaintiffs cite several instances during the course of this litigation in which this court questioned not only the legal basis for the defendants' position but also their good faith in litigating certain aspects of this matter. Plaintiffs also point to the defendants' initial answer to the complaint and their third party action against Blue Cross and Blue Shield, which provided benefits under the plan covering Michelle's father and which Judge Stadtmueller had previously ruled had only secondary liability, in support of their claim that the defendants violated Rule 11 in the course of their defense of this action. Having already awarded plaintiffs substantial attorneys fees in this matter, however, I decline their invitation that the Plan and/or its attorneys also be sanctioned pursuant to Rule 11 or under this court's inherent authority.

Sanction awards, like attorney's fees, are discretionary. "In exercising its discretion, a district court must also bear in mind that such sanctions are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel." *Hartmarx Corp. v. Abboud,* 326 F.3d 862, 867 (7th Cir. 2003)(quoting *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 118 (7th Cir.1994)). While I doubt that the "creativity of counsel" would suffer were I to impose Rule 11 sanctions, I am mindful that such sanctions do impose a significant and unpleasant black mark on the practicing bar.

If this case had proceeded with no defense other than the general denial and the affirmative

9

defenses initially asserted by the Plan, I would have no difficulty imposing a sanction over and above the attorneys fees I have decided to award. But as noted above, the Plan ultimately did assert a legal defense to its liability that, given the previous state court proceeding, was not frivolous, namely, *res judicata*. The assertion of that defense prevents me from finding that the Plan's denial of liability after that time was frivolous. This was essentially the conclusion I reached in denying Plaintiff Roy's motion for Rule 11 sanctions in my decision and order of October 19, 2004. (Docket # 81 at 8.) Although plaintiffs suggest that defendants should be sanctioned for failing to at least concede the amount of benefits due under its policy, they offer no authority that would support imposing a Rule 11 sanction for failing to concede an element of the plaintiff's claim.

This is not to say that plaintiffs' request for Rule 11 sanctions is wholly without merit. As I noted in dismissing their third party action against Blue Cross and Blue Shield, the defendants' third party claims had no basis in law. And while I agree with the defendants that their continued denial of liability was not frivolous after they asserted the defense of *res judicata*, it now appears that at least some of the denials in their answer had no factual support. In their answer to plaintiff's complaint, for example, the defendants denied that plaintiff had complied with "the Potawatomi Plan and its administrative requirements relative to notice and submission of the claim for benefits." Answer to Compl. ¶ 11. Defendants never offered any evidence in support of this denial and it appears clear claims for benefits were properly submitted to the Plan. Thus, at least this assertion would seem to constitute a violation of Rule 11(b)(3). And Plaintiff Roy's previously filed motion for Rule 11 sanctions provided defendants with sufficient notice to satisfy the requirements of Rule 11(c)(A). *See Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1026-27 (7th Cir. 1999) (holding that previously denied motion for sanctions provided sufficient notice to satisfy Rule 11's safe harbor

provisions when absence of evidentiary support does not become apparent until after trial).

Despite this apparent violation of Rule 11, I nevertheless decline plaintiffs' request for sanctions. I do so in part because I have already awarded plaintiffs attorneys fees under ERISA itself. I also find that the defendants' denial of this fact did not significantly add to the delay in the disposition of the case. That delay seems to have resulted from litigation concerning the *res judicata* defense. Lastly, I deny plaintiffs' request for Rule 11sanctions, however, because I find that counsel for plaintiff Roy also violated Rule 11 by asserting claims that had no basis in law. I pointed this out in my order of April 4, 2005, in which I partially granted defendants' motion for summary judgment and dismissed plaintiff's state law claims. Docket # 101 at 14-15. It would be unfair to sanction one party's attorneys for violating Rule 11 but ignore similar violations by the counsel for the other party. Although no such claims were asserted by counsel for the "involuntary" plaintiffs, I am satisfied that the fees and interest already awarded on their claims is sufficient.

## III. Interest

"Whether to award prejudgment interest to an ERISA plaintiff is a question of fairness, lying within the Court's discretion, to be answered by balancing the equities." *Telemark Life Ins. Co. v. University of Chicago Hospitals,* 207 F.3d 876, 885 (7th Cir. 2000). For the reasons noted above, an award of prejudgment interest is a necessary component of ensuring that full compensation is awarded. Plaintiffs request prejudgment interest at the rate 12%*, see* Wis. Stat. 628.46(1), but that statute only governs "insurers" rather than benefit plans. Moreover, it is doubtful that such a high interest rate would be necessary to make the plaintiffs whole. Accordingly, I will award interest at the average prime rate during the period the claims for services have been outstanding. *See Cement Division, National Gypsum Co. c. City of Milwaukee,* 31 F.3d 581, 587

11

(7th Cir. 1994). The award of interest, however, only relates to the specific monetary claims of St. Joseph's Hospital and the Marshfield Clinic. Counsel for the "involuntary" plaintiffs is directed to submit a statement documenting the amount of interest claimed within ten days and advise the court whether the amount claimed is in dispute.

## IV. Conclusion

Kelly Roy's attorney's fees totaled $49,831.24, and counsel conceded that a 7/25/05 charge for 2.10 hours is a mistake, which reduces the total by $512.65 to $49,318.59. Deducting 30% from that amount results in a total of $34,523.01. The providers' attorney's fees amount to $72,398.00. Forest County Potawatomi Group Health Dental Vision and Short Term Disability Plan is directed to pay $582,024.49 (plus interest) to St. Joseph's Hospital and $140,645.03 (plus interest) to the Marshfield Clinic. The defendant Plan is also to pay counsel for Kelly Roy $34,523.01 and counsel for the involuntary plaintiffs $72,398. The defendant Plan is also ordered to process any outstanding claims under the terms of the Plan. Since I have not relied upon the challenged portions of the plaintiffs' reply briefs, the motions to strike (docket #171, 174 and 176) are denied as moot. Entry of judgment will await receipt of the prejudgment interest calculations from the involuntary plaintiffs.

**SO ORDERED.**

Dated this   22nd   day of February, 2006.

                                    /s William C. Griesbach
                                    William C. Griesbach
                                    United States District Judge